1  Rhonda Lunsford, SBN 219239
   P.O. Box 31
2  San Leandro, CA 94577
   Telephone:(510) 759-9529
3  rrlunsford@hotmail.com

4  Attorney for Plaintiff

5

6                    **UNITED STATES DISTRICT COURT**

7                   **NORTHERN DISTRICT OF CALIFORNIA**

8                      **SAN FRANCISCO DIVISION**

9

10  JOHN DOE                              )  Case No.:
                                          )
11          Plaintiff,                    )
                                          )
12     vs.                                )  COMPLAINT FOR DAMAGES AND
                                          )  DECLARATORY AND INJUNCTIVE
13                                        )  RELIEF
    OFFICE OF PERSONNEL MANAGEMENT,       )
14  BLUE CROSS AND BLUE SHIELD            )
    ASSOCIATION, UNIVERSITY OF            )
15  CALIFORNIA SAN FRANCISCO              )
    MEDICAL CENTER, ALAMEDA COUNTY        )  DEMAND FOR JURY TRIAL
16  HEALTH SYSTEM, SUTTER EDEN            )
    MEDICAL CENTER, DR. YOUSSEF E.        )
17  YOUSSEF, VERONICA PERAZA, HYUNJI      )
    AHN AND SARA DULL.                    )
18                                        )
    DOES 1 through 10                     )
19                                        )
            Defendants.                   )
20                                        )
                                          )
21                                        )
                                          )
22                                        )
                                          )
23                                        )
                                          )
                                          )
24

25     1.  Plaintiff John Doe (hereinafter referred to as "Plaintiff"), by counsel, brings this action

26         for violations of Plaintiff's rights under Section 504 of the Rehabilitation Act of 1973

27         ("Section 504"), 29 U.S.C. 794, Section 501 of the Rehabilitation Act of 1973

28         ("Section 501"), 29 U.S.C. 791, Section 1557 of the Affordable Care Act ("ACA"), 42

U.S.C. 18116), Section 2719 of the ACA, 42 U.S.C. §300gg-19, Title VI of the Civil

Rights Act of 1964 ("Title VI"), 42 U.S.C. §2000d *et. seq.*, Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et. seq* ., Federal Employees Health

Benefits Act of 1959 ("FEHBA"), 5 U.S.C. §8901, the Fourteenth Amendment to the

U.S. Constitution ("14th Amendment"), 42 U.S.C. §1983, Medicare Act ("Medicare"),

42 U.S.C. §1395 et seq., Medicaid Act ("Medicaid", 42 U.S.C. §1396 et seq., Federal

Torts Claims Act (FTCA), 28 U.S.C §§2671-2680, Americans with Disabilities Act of

1990, (ADA), 42U.S.C. §12101et.seq., Conspiracy to Interfere with Civil Rights

(Conspiracy) 42 U.S.C. §1985, Unruh Civil Rights Act (California Civ Code §51, Tom

Bane Civil Rights Act (California Civ Code § 52.1), against Defendants, the United

States Office of Personnel Management (hereinafter referred to as "OPM"), Blue Cross

and Blue Shield Association (hereinafter referred to as "BCBSA"), University of

California San Francisco Medical Center (hereinafter referred to as "UCSFMC"),

Alameda County Health System, Sutter Health Eden Medical Center (hereinafter

referred to as "Eden Medical Center"), Dr. Youssef E. Youssef (hereinafter referred to

as "Dr. Youssef"), Veronica Peraza Case Manager (hereinafter referred to as "Peraza")

and Blue Shield of California Case Manager Hyunji Ahn (hereinafter referred to as

"Ahn"), Sutter Health Eden Medical Center Case Manager Sara Dull (hereinafter

referred to a "Dull").

## **JURISDICTION**

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331, because Plaintiff's claims arise under federal laws, including Section 501 and

504 of the Rehabilitation Act of 1973, Section 1557 of the Affordable Care Act, the

Fourteenth Amendment to the U.S. Constitution (enforced via 42 U.S.C. § 1983), and

the Medicare Act (42 U.S.C. § 1395 et seq.). The Court also has jurisdiction under 28

U.S.C. § 1343(a)(3) for civil rights claims (e.g., the claims for due process and equal protection violations) and 5 U.S.C. §702 the Administrative Procedures Act (hereinafter referred to as APA). Additionally, 5 U.S.C. § 8912 grants the district courts original jurisdiction over civil actions related to the FEHB Program. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims.

## **VENUE**

3.  Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e)(1) because at least one Defendant is an agency of the United States and Plaintiff resides in this District. A substantial part of the events or omissions giving rise to the claims occurred in this District: Plaintiff's healthcare benefit claims were submitted from, and meant to be provided in, California, and the effects of Defendants' conduct (including Plaintiff's injuries and denial of benefits) have been felt by Plaintiff in this District. Accordingly, venue in this Court is appropriate.

4.  All conditions precedent to the filing of this lawsuit have been satisfied or should be deemed satisfied. To the extent any administrative remedies or notice requirements apply, Plaintiff has exhausted such remedies, or they are futile. For example, Plaintiff pursued administrative appeals of benefit denials with OPM since 2022, but OPM failed to timely adjudicate those appeals, leaving Plaintiff with no relief. Given Defendants' inaction and the ongoing irreparable harm to Plaintiff, further exhaustion of administrative processes would be futile, and Plaintiff is entitled to seek judicial relief.

## **PARTIES**

5. Plaintiff John Doe is an adult African American male and a resident of Oakland, California, within this District. At all relevant times herein, Plaintiff has been enrolled in a federal health benefits plan administered by OPM and executed by Blue Cross and Blue Shield Association and has had a serious medical condition that constitutes a disability, requiring specialized care and treatment.

6. Defendant Office of Personnel Management (OPM) is an agency of the United States government. OPM administers the Federal Employees Health Benefits (FEHB) Program, which provides health insurance benefits to federal employees, retirees, and their dependents, including Plaintiff. OPM's responsibilities include overseeing benefit determinations and adjudicating appeals of denied health benefit claims under the FEHB Program. At all relevant times herein, OPM was acting through its officials and agents under color of federal law.

7. Defendant Blue Cross and Blue Shield Association (BCBSA) is a private health insurance corporation based outside of the State of California that has 33 affiliates operating throughout the United States. Upon information and belief, BCBSA contracts with OPM under the FEHB Program to provide health insurance coverage to federal employees such as Plaintiff. BCBSA does business in the State of California and receives federal financial assistance (including payments from the federal government and participation in federally funded healthcare programs such as Medicare and Medicaid). BCBSA was responsible for processing and paying health benefit claims as Plaintiff's primary insurer under FEHB plan.

8. Defendant University of California San Francisco Medical Center, part of the University of California at San Francisco (UCSFMC) is an academic medical center and community hospital with three main campuses: Parnassus, Mount Zion, and Mission Bay. Defendant University of California San Francisco Medical Center

(UCSFMC) is a public academic medical center and hospital operated by the Regents of the University of California, a public entity established under Article IX, Section 9 of the California Constitution. At all times relevant to this Complaint, UCSFMC was and is located in San Francisco, California, and was acting as an arm of the State of California. UCSFMC is sued in its official capacity as a public hospital and healthcare.

9. Alameda County Health System (ACHS) is a public health care system organized and operating under the laws of the State of California. ACHS manages and operates multiple healthcare facilities throughout Alameda County, Including but not limited to Highland Hospital, San Leandro Hospital, John George Psychiatric Hospital, Fairmont Rehabilitation & Wellness, and Alameda Hospital as well as a number of other federally funded healthcare centers and community-based clinics.

10. Sutter Health Eden Medical Center (SHEMC) is a hospital and medical center located in Castro Valley, California. SHEMC is owned and operated by Sutter Health, a California not-for-profit public benefit corporation operating under the laws of the State of California.

11. Defendant Dr. Youssef E. Youssef is a physician licensed to practice medicine in the State of California. At all times relevant to this Complaint, Defendant Dr. Youssef was employed as an internal medicine physician at San Leandro Hospital, located in San Leandro, California. Defendant Dr Youssef is sued in his individual capacity for actions and omissions undertaken under color of state law during his employment at San Leandro Hospital.

12. Defendant Veronica Peraza is a Case Manager employed by San Leandro Hospital, a medical facility located in San Leandro, California. At all times relevant to this Complaint, Defendant Peraza acted within the scope of her employment, coordinating patient care and discharge planning. San Leandro Hospital operates under the

Alameda Health System, a public healthcare provider in Alameda County, California. Defendant Peraza is sued in her individual capacity for actions and omissions undertaken during her employment with San Leandro Hospital.

13. Defendant Hyunji Ahn is a Case Manager employed by Blue Shield of California, health insurance provider.  At all times relevant to this Complaint, Defendant Ahn acted within the scope of her employment as a case manager, overseeing and coordinating healthcare services for insured individuals, including the Plaintiff.  Blue Shield of California is a licensee of the Blue Cross Blue Shield Association, operating as a not-for-profit health plan in California.  Defendant Ahn is being sued in her individual capacity for actions and omission undertaken during her employment with Blue Shield of California.

14. Sara Dull is a Case Manager employed by Sutter Eden Medical Center, a medical facility located in Castro Valley, California. At all times relevant to this Complaint, Defendant Dull acted within the scope of her employment, coordinating patient care and discharge planning.  Sutter Health Eden Medical Center operates under the Sutter Health System.  Defendant Dull is sued in her individual capacity for actions and omissions undertaken during her employment with Sutter Health Eden Medical Center.

15. Defendants Does 1 through 10 are persons or entities currently unknown to Plaintiff who were involved in the acts and omissions alleged herein.  Plaintiff will seek permission to amend this Complaint to allege their true names and capacities when they are ascertained.  Plaintiff is informed and believes, and on that basis alleges, that each of the Doe Defendants was in some manner legally responsible for the wrongful acts and injuries suffered by Plaintiff, whether as direct participants, agents, servants, employees or representatives of the named Defendants.

## STATEMENT OF FACTS

16. Plaintiff is a disabled African American man who suffers from a rare, serious medical disorder that predominantly affects individuals of African American descent. This condition causes significant health complications and physical limitations, substantially impairing one or more of Plaintiff's major life activities. As a result, Plaintiff requires ongoing medical treatment, specialized therapy, and rehabilitation services to maintain his health and mobility.

17. Since approximately May 2022 and continuing, Defendants OPM and BCBSA have failed to properly adjudicate Plaintiff's health benefit claims and failed to ensure that Plaintiff receives the necessary medical treatment and rehabilitation for his condition. Plaintiff has repeatedly sought coverage for medically necessary treatments and services that accommodate his medical conditions and disability through his health insurance plan, but OPM and BCBSA have ignored, unreasonably delayed, or improperly denied these claims and appeals. Despite Plaintiff following the required procedures to obtain care under his plan, OPM has not fulfilled its duty to oversee the processing of claims and appeals, resulting in Plaintiff going without critical treatment.

18. The lack of movement, therapy, and proper medical care during these extended periods of confinement has caused Plaintiff to suffer severe medical complications. Plaintiff's muscles have atrophied (wasted away) due to disuse, and he has experienced a significant loss of strength and endurance. He has developed painful pressure ulcers (bedsores) from being in bed for so long without proper preventative care. Plaintiff also endures chronic pain throughout his body as a result of prolonged inactivity and untreated symptoms. Many of these complications may be irreversible or difficult to reverse, placing Plaintiff's long-term health and mobility at serious risk.

19. The prolonged isolation and confinement have taken a devastating toll on Plaintiff's mental health and overall quality of life. Being largely confined to a bed and unable to engage in normal daily activities or social interaction has caused Plaintiff to experience severe emotional distress, depression, and anxiety. Furthermore, because Defendants' actions have at times physically separated Plaintiff from his home and community, Plaintiff has been cut off from his only support system of family and friends. This isolation has exacerbated his mental anguish and feelings of hopelessness.

20. Plaintiff has multiple sources of health insurance coverage, including a primary insurer through the FEHB Program (administered by Anthem/BCBS) and additional secondary coverage such as Medicare, and tertiary coverage such as Medi-Cal (California's Medicaid program). When Plaintiff's primary insurer (Anthem/BCBS) denies coverage for a treatment or service, Defendants have failed to take the necessary steps to obtain payment from Plaintiff's secondary and tertiary insurers. Specifically, Defendants have not submitted or forwarded the denied claims to Medicare or Medi-Cal for payment, even though those programs might cover the services if properly billed. For example, on occasions when BCBSA refused to authorize a doctor-recommended treatment for Plaintiff, Defendants did not provide the documentation or billing required for Medicare (Plaintiff's secondary insurer) to consider the claim, nor did they attempt to have Medi-Cal (Plaintiff's tertiary insurer) cover the service. By failing to coordinate benefits and bill Plaintiff's secondary/tertiary insurers after a primary denial, Defendants have effectively left Plaintiff with no coverage for necessary treatments, preventing him from accessing those healthcare services entirely.

21. Plaintiff's treating physicians have recommended specific treatments, therapies, and assistive devices to manage his condition and improve his prospects for recovery. However, Defendants have repeatedly denied authorization or coverage for these

doctor-recommended treatments. In doing so, Defendants have failed to offer any medically appropriate alternatives. Instead of approving the prescribed rehabilitation or therapy—or providing an equivalent solution—Defendants simply issue blanket denials (or fail to respond at all), leaving Plaintiff without any viable treatment path that accommodates his medical conditions and disability. This approach has stalled Plaintiff's rehabilitation and recovery, causing his condition to worsen due to lack of timely intervention.

22. Plaintiff is a medically fragile individual and Defendants' failure to provide Plaintiff with timely access to his health benefits has left Plaintiff in medical turmoil and distress and have interfered with Plaintiff's ability to access medical care from his providers.

23. On January 13, 2025, Plaintiff was discharged from the University of California San Francisco Medical Center ("UCSFMC") without a viable discharge plan in place. Despite knowing that no one would be present at the designated residence and that no support or care arrangements had been made, UCSFMC released Plaintiff, who was subsequently taken—outside of any formal discharge plan—to Highland Hospital, a public facility in Alameda County, in a medically vulnerable condition.

24. On the same day, physicians at Highland Hospital attempted to repatriate Plaintiff back to UCSFMC due to the dangerously premature discharge. UCSFMC brazenly refused the request, leaving Plaintiff abandoned by the institution that had created the crisis.

25. Plaintiff was admitted to Highland Hospital for treatment and placement. On or about January 14, 2025, Plaintiff was transferred to San Leandro Hospital due to bed availability—not clinical need—illustrating the ad hoc, chaotic, and unsafe nature of his so-called "care plan."

26. On January 15, 2025, Plaintiff was evaluated by San Leandro Hospital's Occupational Therapy (OT), which confirmed that Plaintiff would benefit from rehabilitation at an acute rehab facility (ARU) as well as inpatient skilled OT to improve his ability to perform essential daily functions. The need for inpatient rehabilitation was unambiguous.

27. That same day, Plaintiff was also evaluated by Physical Therapy (PT), which independently reached the same conclusion: Plaintiff needed ARU-level therapy and was not at discharge baseline.

28. Also on January 15, 2025, Blue Shield of California FEP Case Manager Hyunji Ahn contacted San Leandro Hospital. There is no documentation of any follow-up, no active case management, and no evidence of her advocating for medically necessary services—despite the clear recommendations of multiple clinical teams.

29. On January 16, 2025, a wound care nurse evaluated Plaintiff and confirmed that he required continuation of the daily wound care regimen prescribed by UCSFMC. Despite this professional assessment, that care would later be inexplicably cut back in direct contradiction of clinical standards.

30. On or about that same day, placement referrals were sent to rehabilitation, skilled nursing, and LTAC facilities on Plaintiff's behalf.

31. On January 17, 2025, Plaintiff engaged with PT and OT, who assisted him in ambulating from bed, further confirming his need for skilled rehabilitative support. Yet, Defendants would soon manufacture false conclusions about Plaintiff's functional baseline to prematurely discharge him.

32. On January 20, 2025, in a shocking display of disregard for Plaintiff's welfare, Dr. Youssef E. Youssef and Case Manager Veronica Peraza informed Plaintiff that he was at "baseline," would receive no further therapy, would receive no further placement

assistance, and was being discharged home with minimal support—despite multiple medical professionals recommending otherwise.

33. When Plaintiff's representative, who had clearly advised staff that she was out of town until the following week, expressed concern and requested more time to find safe placement, Dr. Youssef and Ms. Peraza refused to cooperate and instead doubled down on the unsafe discharge.

34. Also on January 20, 2025, Ms. Peraza told Plaintiff that his wound care regimen was reduced from a medically indicated daily schedule to just three times per week—an unconscionable act of cost-cutting at the expense of patient health.

35. From that point forward, Plaintiff received no further rehabilitative assistance to even get out of bed or maintain his current condition—let alone improve it.

36. Plaintiff alleges that both the determination that Plaintiff was at "baseline" and the decision to withhold treatment because of Plaintiff's disability status amounts to unlawful disability discrimination and violates Plaintiff civil rights, liberties and protections.

37. Further, these reckless decisions to withhold medical care effectively sabotaged any chance of Plaintiff qualifying for acute rehab or skilled nursing care by removing the very medical services that justified such placement. The actions of Defendants were calculated and arguably negligent, and overtly discriminatory.

38. On or about January 22, 2025, Kentfield Long Term Acute Care Hospital (LTAC) agreed to accept Plaintiff and requested authorization to admit him. BCBSA promptly denied the request with no legitimate justification, abandoning Plaintiff once again.

39. In retaliation for Plaintiffs representative's absence—despite clear prior notice—San Leandro Hospital Social Worker Roberto Gonzalez contacted the Oakland Police Department to conduct a "welfare check" on Plaintiff's representative, thereby

mischaracterizing the situation as patient neglect. This was a manipulative, coercive, and false action that further escalated the situation.

40. On January 23, 2025, Dr. Youssef made comments in Plaintiff's medical record falsely portraying Plaintiff's representative as being uncooperative and claiming, without basis, that Plaintiff had been "hospital hopping." These notes were intentionally misleading, clearly designed to justify an unlawful discharge rather than to document clinical reality.

41. That same day, Mr. Gonzalez reported Plaintiff's representative to Adult Protective Services (APS), again misrepresenting the facts and maliciously implying abandonment—despite knowing she was out of town and had been in communication with hospital staff.

42. On January 24, 2025, Case Manager Shelly Chase of San Leandro Hospital finally engaged in substantive conversation with Blue Shield FEP Case Manager Ahn. During the call, Ms. Ahn misrepresented key facts—including falsely stating that UCSFMC had paid for a power wheelchair and incorrectly identifying Plaintiff's representative as an "attorney for the government."

43. On January 27, 2025, Dr. Youssef updated Plaintiff's medical record again to portray both Plaintiff and his representative as obstructing the discharge, further cementing a false narrative to avoid accountability.

44. On or about January 28, 2025, Dr. Youssef updated Plaintiff's medical record to state that San Leandro Hospital reached out to UCSFMC about discharge arrangements for Plaintiff and was allegedly told the hospital would have to seek a court order to discharge Plaintiff. Dr. Youssef further memorialized in Plaintiff's medical record that San Leandro Hospital would escalate the matter to the hospital's legal team, seemingly based upon misinformation received from USCFMC that suggested they actively

sought and obtained a court order to discharge Plaintiff. This was a clear sign that Defendants knew their conduct was legally suspect.

45. On or about January 29, 2025, without prior warning, UCSFMC delivered the power wheelchair to San Leandro Hospital. While delivering the power wheelchair to Plaintiff's room, Plaintiff's nurse stated something to the effect of, UCSFMC had "planned to donate" the chair but changed course. The motive behind the delivery appears to be a further attempt to manufacture justification for discharge.

46. No request had been made by Plaintiff to deliver the power wheelchair to the hospital. He had no ability to transport it, and the delivery appeared to be part of a contrived effort to facilitate discharge without actually providing meaningful care.

47. On January 30, 2025, Ms. Ahn confirmed with San Leandro that Plaintiff had 30 days of skilled nursing benefits available, yet still denied LTAC placement, falsely claiming Plaintiff lacked medical necessity—even after multiple clinical assessments proved otherwise.

48. Plaintiff discharged from San Leandro Hospital on February 1, 2025, and transported to Eden Medical Center for assistance with placement and treatment—another facility change driven by a lack of proper care, bureaucratic indifference, and insurance denial.

49. Plaintiff was admitted to Eden Medical Center and placed in an "observation status". Plaintiff remained in an observation status for the duration of his hospital stay.

50. On February 3, 2025, Plaintiff was evaluated by two wound nurses at Eden Medical Center who "highly" recommended LTAC placement.

51. On February 3, 2025, Eden Medical Center contacted Ms. Ahn to discuss discharge planning. Ms. Ahn advised something to the effect of, she had been on Plaintiff's case for "2 plus years" and that "all attempts at placement have been unsuccessful or short lived" in addition to other disparaging comments. Still, there was no documentation of

any reasonable action taken or efforts made by Ms. Ahn to facilitate placement or the provision of medically necessary services.

52. The following day, Plaintiff was evaluated by PT and OT who agreed that Plaintiff could benefit from LTAC placement.

53. Despite the initial assessments from therapy and wound care specialists, days later this care was cut back.

54. On February 10, 2025, Eden Medical Center case manager Sarah Dull and a representative from physical therapy notified Plaintiff that it was determined that Plaintiff was at "baseline" and not a candidate for rehabilitation, and that he would receive no further physical or occupational therapy, despite therapy being clinically indicated for Plaintiff's condition. That same day, Plaintiff's wound care was reduced from daily to three times a week.

55. In addition, Ms. Dull advised Plaintiff that because he was in an "observation" status and not an "inpatient" status he was not eligible for LTAC placement either.

56. From that day forward, Plaintiff received no further rehabilitative therapy to ambulate out of bed or maintain his current level of functioning.

57. Plaintiff alleges that both the determination that Plaintiff was at "baseline" and the decision to withhold treatment because of Plaintiff's disability status amounts to unlawful disability discrimination and violates Plaintiff civil rights, liberties and protections.

58. On March 8, 2025, Plaintiff discharged from Eden Medical Center due to inadequate placement assistance, lack of proper wound care, and lack of rehabilitation services. Plaintiff is under the information and belief that following discharge Eden Medical Center reported Plaintiff to Adult Protective Services (APS) for "self-neglect".

59. The decisions Eden Medical Center were reckless and effectively sabotaged any chance of Plaintiff qualifying for acute rehab, skilled nursing care, and LTAC by both keeping Plaintiff in an observation status and by removing the very medical services that justified such placement. The actions of Defendants were arguably negligent and inhumane, and also discriminatory.

60. The narrative surrounding Plaintiff's hospitalizations and discharges that is memorialized in Plaintiff's medical record has obstructed Plaintiff's ability to obtain medically necessary health care and has inflicted emotional distress and humiliation on Plaintiff. Statements to the effect of, "UCSF had to obtain a court order to have him discharged," and other statements that suggest that Plaintiff is "hospital hopping" or otherwise squandering health resources he does not need are contrary to Plaintiff's clinical reality and must stop.

61. Plaintiff alleges UCSFMC and BCBSA have intentionally provided incomplete and/or inaccurate hospitalization and hospital discharge information to his providers in an effort to sabotage his ability to obtain and maintain the health care necessary to manage his medical conditions and to maintain function as a result of his race and/or disability.

62. Plaintiff's ordeal reflects a pattern of systemic neglect, discrimination based on disability and in some instances race, and deliberate sabotage of his access to medically necessary care. Defendants worked in concert—or at minimum, through parallel inaction—to engineer unsafe discharges, deny vital rehabilitation, and ultimately abandon Plaintiff to deteriorating health outcomes.

**COUNT ONE**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**(29 U.S.C. §794) DISABILITY DISCRIMINATION**
**(As to Defendants OPM, BCBSA, UCSFMC, Alameda County Health System, Eden**

Medical Center)

63. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64. Section 504 of the Rehabilitation Act of 1973 provides that no otherwise qualified individual with a disability shall, solely by reason of their disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance, or under any program or activity conducted by an Executive agency. Plaintiff is an individual with a disability as defined by Section 504, as his medical condition substantially limits one or more major life activities (including mobility and self-care). At all relevant times, Plaintiff was "otherwise qualified" to receive the health services and benefits at issue (in that he met all other eligibility requirements for coverage and treatment).

65. Defendants OPM, BCBSA, UCSFMC, Alameda County Health System, and Eden Medical Center are each subject to the requirements of Section 504. OPM is a federal Executive agency administering a health program (the FEHB Program), and thus its conduct must comply with Section 504's anti-discrimination mandate. Defendants OPM, BCBSA, UCSFMC, Alameda County Health System, and Eden Medical Center receive federal financial assistance—upon information and belief, including federal funds such as government insurance payments, Medicare and/or Medicaid reimbursements, and other federal funding in connection with their services. Accordingly, all three Defendants were required to refrain from disability-based discrimination against Plaintiff and to ensure that Plaintiff had equal access to the benefits and services provided.

66. Defendants violated Section 504 by excluding Plaintiff from participation in, and denying him the benefits of, their healthcare programs and services because of

Plaintiff's race and disability. As described above, Defendants failed to provide Plaintiff with equal and effective access to medically necessary health services: they denied and delayed approvals for critical treatments and rehabilitation, withheld medical treatment, left Plaintiff effectively confined without appropriate accommodations, and did not make modifications or adjustments to their policies to account for Plaintiff's condition. These actions (and inactions) treated Plaintiff differently and worse than individuals without disabilities who seek health services and had the effect of denying Plaintiff the same opportunity to benefit from Defendants' health programs as nondisabled persons. In short, Plaintiff was subjected to adverse treatment and deprived of healthcare by reason of his race and disability, in violation of Section 504.

67. Defendants' conduct was at least deliberately indifferent to Plaintiff's federally protected rights and was willful and intentional insofar as Defendants were repeatedly put on notice of Plaintiff's serious needs and the consequences of denying him care yet failed to correct their discriminatory actions. As a direct and proximate result of Defendants' violation of Section 504, Plaintiff has suffered substantial injuries, including physical pain and deterioration, emotional distress, and the loss of the benefits of his health coverage. Pursuant to Section 504 (incorporating the remedies of Title VI of the Civil Rights Act), Plaintiff is entitled to recover compensatory damages.

**COUNT TWO**
**Violation of Section 501 of the Rehabilitation Act of 1973 29 U.S.C. §791**
**Discrimination in Programs conducted by Federal Agencies**
**(As to Defendants OPM and BCBSA)**

68. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

COMPLAINT

69. Section 501 of the Rehabilitation Act of 1973 prohibits discrimination on the basis of disability in administration of programs or activities conducted by federal agencies, including healthcare services.  This provision mandates that federal agencies take affirmative actions to ensure that individuals with disabilities have equal access to healthcare programs and services that are funded or administered by the federal government, such as the benefits und the FEHB Program.

70. Defendants, including Defendant OPM, as a federal agency administering the FEHB Program, and Defendant BCBSA, as entities receiving federal funding and operating under the FEHB Program under contract with OPM, are subject to Section 501's nondiscrimination provisions. These Defendants have a duty to ensure that individuals with disabilities, such as Plaintiff, have equal access to healthcare services and benefits under the FEHB program, including reasonable accommodations or modifications when necessary.

71. Defendants have violated Section 501 by failing to provide Plaintiff, an individual with a disability, equal access to necessary healthcare services under the FEHB Program. Despite Plaintiff's serious medical condition, Defendants have discriminated against him by:

- Denying Plaintiff timely and appropriate medical treatment for his disability, despite clear recommendations from his treating physicians.
- Failing to engage in the required process to accommodate Plaintiff's medical needs, including denying or delaying or otherwise failing to provide coverage for treatments that were medically necessary for his condition.

- Requiring Plaintiff to receive care out of state, thereby separating him from his only support system and limiting his access to appropriate local healthcare services.

- Failing to properly coordinate benefits with Plaintiff's secondary insurers, leaving him without adequate coverage for necessary treatments.

- Failing to update their policies and procedures, resulting in an outdated and grossly inadequate system that perpetuates flawed and futile outcomes for Plaintiff's healthcare claims.

72. As a result of Defendants' discriminatory actions in administering Plaintiff's healthcare benefits, Plaintiff has suffered significant harm. This includes physical deterioration, chronic pain, emotional distress, and the inability to access the medical care needed to manage his condition. Defendants' failure to ensure Plaintiff's access to healthcare services and accommodations under the FEHB Program has significantly impaired his ability to receive timely and necessary care, thereby exacerbating his medical and emotional distress.

**COUNT THREE**
**Violation of Section 1557 of the Affordable Care Action 42 U.S.C. §18116**
**Race and Disability Discrimination**
**(As to Defendants BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center)**

73. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74. Plaintiff alleges that BCBSA, UCSFMC, Alameda County Health System and Eden Medical Center are subject to Section 1557 of the Affordable Care Act.

75. Section 1557 of the Patient Protection and Affordable Care Act (ACA) provides that an individual shall not be subjected to discrimination on the ground of race, color,

national origin, sex, age, or disability under any health program or activity that receives federal financial assistance or is administered by and executive agency. At all relevant times, Plaintiff was protected under Section 1557 as a Black/African American individual and as an individual with a disability. Plaintiff's race (African American) and disability (his rare medical disorder) are each protected characteristics under Section 1557.

76. Defendants each constitute a "health program or activity" receiving federal financial assistance or administered by an Executive agency and therefore must comply with Section 1557. BCBSA receives federal financial assistance in the form of federal payments or reimbursements (participation in Medicare and/or Medicaid and receiving federal funds through OPM contracts). UCSFMC, Alameda County Health System and Eden Medical Center receive federal financial assistance in the form of federal payments or reimbursements (participation in Medicare and/or Medicaid). By virtue of these facts, these Defendants are covered entities under Section 1557 and are forbidden from discriminating on the basis of race or disability in their provision of healthcare services and benefits.

77. Defendants violated Section 1557 by discriminating against Plaintiff in the provision of healthcare benefits and services on the grounds of Plaintiff's race and disability. Defendants denied Plaintiff medically necessary treatments, failed to properly process and pay for his care, withheld rehabilitative treatment because of Plaintiff's disability status, provided incomplete and/or inaccurate hospitalization and hospital discharge information to his providers in an effort to sabotage his ability to obtain and maintain the health care necessary to manage his medical conditions and to maintain function, and imposed burdens on him (such as unnecessary isolation and lack of accommodation) that they did not impose on other patients or beneficiaries outside of

Plaintiff's protected classes. Defendants' refusal to authorize care and their neglect of Plaintiff's needs were driven, at least in part, by considerations of Plaintiff's disability status and his race. Upon information and belief, similarly situated patients without disabilities did not have their necessary care withheld in this manner, and patients not of African American descent did not face the same level of disregard when dealing with conditions common to their demographic. Plaintiff's rare disorder predominantly affects Black individuals and easily identifies Plaintiff as Black; Defendants' failure to treat his condition with appropriate urgency and care resulted in a disparate impact on Plaintiff as a Black patient with a disability. To the extent any Defendant acted with conscious bias or prejudice, such intent would also violate Section 1557. In either case, Plaintiff was subjected to unequal treatment in healthcare on prohibited grounds.

78. As a direct and proximate result of Defendants' discriminatory actions, Plaintiff suffered significant harm, including deterioration of his health, extreme pain and suffering, and emotional trauma. Defendants' conduct was undertaken with deliberate indifference to Plaintiff's civil rights under Section 1557, given that Defendants knew of Plaintiff's race and disability and the harm he was experiencing yet persisted in their course of conduct. Plaintiff is entitled to relief under Section 1557, including compensatory damages for his injuries, declaratory relief confirming the violation of his rights, and permanent injunctive relief to ensure non-discriminatory treatment going forward. Plaintiff also seeks an award of attorneys' fees and costs as allowed by law (e.g., 42 U.S.C. § 18116 incorporating remedies of Title VI/Section 504 and other civil rights statutes).

**COUNT FOUR**
**ACA Section 2719 (42 U.S.C. 300gg-19)**
**(As to Defendant BCBSA)**

79. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein

80. Congress, through legislative action, reformed the appeal and review processes for denied health benefits claims under Section 2719, and FEHB carriers are mandated to comply. ACA Section 2719 includes a statutory waiver of sovereign immunity for a plan's failure to comply. Under Section 2719(a)(2)(a), group health plans were mandated to provide an internal claims and appeals process that incorporates the claims and appeals procedures (including urgent claims) set forth at 29 CFR 2560.503-1 (ERISA claims and appeals), which includes a private right of action for failures to establish and follow reasonable claims procedures. Under these procedures, a failure by the carrier to strictly adhere to all internal claims and appeals requirements means that an enrollee is deemed to have exhausted the internal claims and appeals process. The enrollee may then elect to immediately initiate an external review or civil action to obtain denied benefits. In addition, if the enrollee chooses to initiate litigation, the Court will review the case de novo and not give deference to the decision of the carrier. Substantial compliance or de minimis errors are not impacted.

81. Plaintiff alleges that since 2022 and continuing, BCBSA has failed to comply with Section 2719 in administering Plaintiff's health benefits and that he has endured unconscionable delays in benefit determinations that has caused harm.

82. Plaintiff seeks judicial review of OPM's FEHB Regulations for compliance with the ACA Section 2719 and other relevant provisions of the ACA, the United States Constitution, and federal law.

**COUNT FIVE**
**Title VI of the Civil Rights Act of 1964 (Title VI) 42 U.S.C. 2000d**
**Discrimination Based on Race and Disability**
**(As to Defendants OPM, BCBSA, UCSFMC, Alameda County Health System, Eden**

**Medical Center)**

83. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

84. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits discrimination on the basis of race, color, or national origin in programs and activities that receive federal financial assistance. Title VI applies to any program or activity receiving federal funds, including healthcare programs administered by Defendants.

85. Defendants are recipients of federal financial assistance and, as such, are prohibited from discriminating on the basis of race, color, or national origin in the provision of healthcare benefits and services.

86. Defendants violated Title VI by discriminating against Plaintiff, an African American male with a disability, and subjecting Plaintiff to disparate treatment by:

- Denying or delaying or otherwise failing to provide coverage for treatments essential for Plaintiff's condition, despite medical necessity, and in a manner that disproportionately impacts him as a Black individual with a disability.

- Withholding rehabilitative treatment clinically indicated for Plaintiff's condition, and in a manner that disproportionately impacts him as a Black individual with a disability.

- Failing to provide accommodations as is required for individuals with disabilities under federal law.

- Failing to properly coordinate claims with secondary insurers, disproportionately affecting Plaintiff's ability to access and receive the medical care he needs.

- Providing incomplete and/or inaccurate hospitalization and hospital discharge information to providers in an effort to sabotage Plaintiff's ability to obtain and maintain the health care necessary to manage his medical conditions and to maintain function.

87. As a result of Defendants' discriminatory practices, Plaintiff has suffered significant harm, including unnecessary delays in medical treatment, physical and emotional distress, and the deprivation of healthcare benefits that he is entitled to under the FEHB Program. These actions, grounded in race and disability discrimination, have left Plaintiff without equal access to healthcare services, directly harming his well-being.

**COUNT SIX**
**Title VII of the Civil Rights Act of 1964 (Title VII) 42 U.S.C. 2000e**
**Discrimination Based on Race and Disability**
**(As to Defendants OPM and BCBSA)**

88. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits discrimination by employers on the basis of race, color, religion, sex, or national origin. Although Title VII is primarily concerned with employment discrimination, it also applies to any entities (such as healthcare providers) that provide benefits to employees or their dependents and receive federal funding or are otherwise covered under federal law. Defendants, including Defendant OPM and BCBSA, are subject to Title VII, as they are involved in the administration of healthcare services under the FEHB Program, which is federally funded and provided to federal employees and their dependents, including Plaintiff.

90. Defendants, as federal contractors and recipients of federal financial assistance, are prohibited from discriminating on the basis of race and disability in the provision of healthcare services. Title VII mandates that all healthcare services offered to federal employees, retirees, and their dependents must be provided equitably, regardless of race, color, or disability.

91. Defendants have violated Title VII by subjecting Plaintiff, a Black male with a disability, to discrimination in the administration of healthcare services under the FEHB Program. Specifically, Defendants have discriminated against Plaintiff by:

- Denying or delaying coverage for necessary medical treatments and services due to Plaintiff's race and disability, even though these treatments were recommended by his healthcare providers.

- Requiring Plaintiff to seek care out of state, unnecessarily separating him from his support system in California, while similarly situated non-disabled individuals or individuals of other racial backgrounds were not subjected to such conditions.

- Failing to make reasonable accommodations for Plaintiff's disability-related healthcare needs, further limiting his access to medical treatment and rehabilitation services.

- Failing to properly coordinate benefits with Plaintiff's secondary insurers, leaving him unable to access needed care and further exacerbating the racial and disability-based discrimination he faces.

92. As a result of Defendants' discriminatory actions in violation of Title VII, Plaintiff has suffered significant physical, emotional, and financial harm. Plaintiff has been denied

equal access to healthcare services under the FEHB Program because of his race and
disability.

## COUNT SEVEN
## VIOLATION OF THE FEDERAL EMPLOYEES HEALTH BENEFITS ACT OF 1959 (FEHBA) 5 U.S.C. §8901 Failure to Provide Healthcare Benefits and Services (As to Defendant OPM and BCBSA)

93. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though
fully set forth herein.

94. Plaintiff alleges FEHBA violations on behalf of OPM and BCBSA.

95. The Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U.S.C. § 8901 et
seq., establishes a health insurance program for federal employees, retirees, and their
dependents, administered by the Office of Personnel Management (OPM). Under
FEHBA, the federal government provides health benefits and coverage to its
employees and their families, and OPM is responsible for ensuring that federal health
insurance plans, including those administered by private insurers like Defendant
BCBS, comply with the requirements set forth in the Act.

96. Under FEHBA, OPM, along with its contractors, including Anthem and BCBS, is
obligated to provide federal employees and their dependents with comprehensive and
timely healthcare benefits. This includes providing necessary treatments, rehabilitative
services, and accommodations for individuals with disabilities, like Plaintiff.
Defendants are also required to process and pay claims for healthcare services in a fair
and timely manner, without discrimination.

97. Defendants have violated FEHBA by failing to ensure that Plaintiff receives the
necessary healthcare benefits and services to which he is entitled. Specifically:

- Defendants have failed to authorize and pay for medically necessary treatments, including rehabilitation services, despite clear recommendations from Plaintiff's healthcare providers.

- Plaintiff has been forced to endure significant delays and denials in obtaining coverage for essential healthcare, directly contrary to the requirements of FEHBA that mandate timely and adequate access to healthcare services.

- Defendants' failure to update policies and procedures or to make reasonable accommodations has left Plaintiff unable to access the medical treatment and rehabilitation he needs to manage his condition, in direct violation of the Act's requirements to provide appropriate care for employees with disabilities.

- Defendants have caused Plaintiff to experience undue hardship by denying or delaying necessary medical treatment and failing to coordinate claims with secondary and tertiary insurers when the primary insurer (BCBS) denied coverage.

98. As a direct result of Defendants' failure to meet their obligations under FEHBA, Plaintiff has suffered significant physical harm, emotional distress, and financial loss. Plaintiff has been deprived of the healthcare benefits he is entitled to under FEHBA, which has exacerbated his condition and caused unnecessary suffering.

**COUNT EIGHT**
**Violation of the Fourteenth Amendment Right to Due Process**
**42 U.S.C. §1983**
**(As to Defendants BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center, Dr. Youssef, Peraza, Ahn, Dull)**

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

100.     At all relevant times, one or more Defendants were acting under color of state law for purposes of 42 U.S.C. § 1983. In particular, Defendants were participants in California's state-run Medi-Cal program and were carrying out functions traditionally attributable to the state in providing healthcare to Plaintiff. Additionally, to the extent that any California state agency or its representatives were involved in controlling or denying Plaintiff's care (by administering Medi-Cal benefits or licensing/authorizing the out-of-state treatment arrangement), those individuals or entities were acting under color of California law. Plaintiff alleges that Defendants jointly participated with state officials or utilized state authority in effectuating the confinement and benefit denials at issue, such that their conduct can be deemed action under color of state law.

101.     The Fourteenth Amendment to the United States Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law. Plaintiff has protected liberty and property interests that are implicated in this case.

102.     Plaintiff has a fundamental liberty interest in freedom from involuntary restraint, bodily confinement, and undue interference with his personal autonomy. Being forced to remain bedridden and isolated against his will implicates Plaintiff's right to liberty and to be free from unreasonable governmental restraint.

103.     Plaintiff also has a property interest in the healthcare benefits and coverage guaranteed to him by law and contract (including benefits under his health insurance and public insurance programs like Medi-Cal and Medicare). These benefits, once conferred by statute or agreement, cannot be arbitrarily denied without due process. Plaintiff reasonably expected to receive the medical services and insurance coverage

he was entitled to, which constitutes a property interest protected by the Fourteenth Amendment.

104.    Defendants (acting under color of state law) deprived Plaintiff of his liberty and property interests without providing constitutionally adequate process. Plaintiff was deprived of his property interest in healthcare benefits when Defendants withheld clinically indicated rehabilitative treatment causing prolonged periods of bed confinement, reduced or terminated Plaintiff's treatment plan in order to coerce Plaintiff to discharge, failed to coordinate care with Plaintiffs secondary insurance coverages, and provided incomplete and/or inaccurate hospitalization and hospital discharge information to Plaintiff's providers in an effort to sabotage his ability to obtain and maintain the health care necessary to manage his medical conditions and to maintain function. In sum, Plaintiff was stripped of important rights (freedom of movement and entitlement to medical benefits) by Defendants' unilateral actions, without the procedural safeguards required by due process.

105.    In addition, Defendant's failed to provide Plaintiff with equal protection under the law and failed to treat him equally under the law based on his membership in a protected class.

106.    Defendants' conduct as described was arbitrary and oppressive and shocks the conscience. Defendants showed a reckless disregard for Plaintiff's constitutional rights and well-being, confining him and denying him medical care in a manner that no civilized society would consider fair or just without due process. As a direct and proximate result of these due process violations, Plaintiff suffered grievous harm, including physical injuries from his unnecessary confinement and lack of treatment, and severe emotional anguish from the sense of injustice and helplessness he

experienced. Plaintiff accordingly seeks relief under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights.

## COUNT NINE
### Violation of Medicare Rights and Protections 42 U.S.C. §1395
### (As to Defendants OPM, BCBSA, UCSFMC, Alameda County Health System, and Eden Medical Center)

107.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

108.    Plaintiff is a beneficiary of the federal Medicare program (Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq.), which provides health insurance coverage to qualified individuals. As a Medicare beneficiary, Plaintiff has certain statutory and regulatory rights and protections. Medicare guarantees patients the freedom to obtain necessary medical care from qualified providers and expects that Medicare will act as a secondary payer when appropriate (for instance, if a primary insurer denies a claim, Medicare can step in to pay for services it covers, provided proper procedure is followed).

109.    Defendants violated Plaintiff's Medicare rights by actively interfering with his ability to utilize Medicare coverage and by failing to adhere to Medicare requirements. When Plaintiff's primary FEHB insurance (administered by BCBSA) denied coverage for certain treatments, Defendants did not forward the claims or relevant information to Medicare for payment, denying Plaintiff of his right to seek coverage from Medicare. Defendants failed to provide or facilitate the required notices or documentation that would have allowed Plaintiff to trigger Medicare coverage.

110.    By not billing Medicare or notifying Medicare of the primary insurer's denial, Defendants prevented Medicare from making any determination on those claims. This effectively denied Plaintiff the Medicare benefits he was entitled to for those services.

Additionally, on information and belief, Defendants did not follow coordination of benefits rules that protect beneficiaries: for example, if a primary insurer denies a claim for a reason that Medicare would not (or if the service is covered by Medicare), the proper procedure is to allow Medicare to consider the claim. Defendants' actions short-circuited this process, leaving Plaintiff with no payment from either primary or Medicare for needed care.

111.    As a direct and proximate result of Defendants' interference with Plaintiff's Medicare rights and protections, Plaintiff suffered substantial harm. He was forced to forgo or pay out-of-pocket for medical services that should have been covered by Medicare, leading to financial loss and/or untreated medical needs. He also endured prolonged physical suffering and emotional distress because necessary care was delayed or denied when Medicare could have provided coverage

### COUNT TEN
### Americans with Disabilities Act of 1990, (ADA) 42U.S.C. §12101et.seq.,
**(As to Defendants OPM, BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center, Dr. Youssef, Peraza, Ahn and Dull)**

112.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

113.    The Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., prohibits discrimination against individuals with disabilities in various aspects of public life, including healthcare services and programs. Under Title II of the ADA, public entities and services, such as Defendant UCSFMC and its contractors, are required to provide equal access to services and accommodations for individuals with disabilities. Similarly, Title III of the ADA extends these protections to private entities and healthcare providers that operate facilities open to the public.

114.    Defendants, including BCBSA, UCSFMC, Alameda County Health System and Eden Medical Center are subject to the ADA's nondiscrimination provisions due to their role in providing healthcare services. As recipients of federal financial assistance or as entities operating under the FEHB Program, Defendants are required to provide equal access to healthcare services for individuals with disabilities, like Plaintiff. They are also required to make reasonable modifications to their policies, procedures, or practices to ensure that individuals with disabilities are not excluded from or discriminated against in healthcare services.

115.    Defendants violated the ADA by discriminating against Plaintiff, an individual with a disability, in the administration of healthcare services and benefits. Specifically, Defendants engaged in the following discriminatory actions:

- Withholding clinically indicated rehabilitative treatment causing prolonged periods of bed confinement.

- Refusing to submit claims to Plaintiff's secondary (Medicare) and tertiary (Medicaid) insurers after his primary insurance denied coverage, thus denying Plaintiff access to his healthcare benefits and services.

- Refusing to assist with viable rehabilitation placement.

- Creating discharge plans that fail to accommodate Plaintiff's needs, acuity and mobility

- Providing incomplete and/or inaccurate hospitalization and hospital discharge information to his providers in an effort to sabotage his ability to obtain and maintain the health care necessary to manage his medical conditions and to maintain function

116.    As a direct result of Defendants' violations of the ADA, Plaintiff has suffered

significant harm. These violations have resulted in physical deterioration, emotional

distress, and unnecessary hardship due to the denial of essential healthcare services,

the failure to accommodate his disability-related needs, and the unlawful discharge

process. Defendants' failure to provide reasonable modifications or accommodations

further exacerbated Plaintiff's medical condition and denied him equal access to the

care he is entitled to under the ADA.

**COUNT ELEVEN**
**Federal Torts Claims Act 28 U.S.C. §§1346, 2671-2680**
**(As to Defendants OPM)**

117.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

118.    The Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680 (1988), waives the

sovereign immunity of the United States for tort actions arising from the negligence of

government employees. The FTCA provides that federal district courts have exclusive

jurisdiction over claims resulting from the negligence of federal employees. Prior to

filing suit under the FTCA, an individual must first seek an administrative resolution

of their claim as required by 28 U.S.C. § 2675(a). On or about July 12, 2024, Plaintiff

filed an administrative claim with the United States Office of Personnel Management

(OPM). On or about October 1, 2024, Plaintiff received a letter from OPM denying his

claim, citing that the Federal Employees Health Benefits Act (FEHBA) is the exclusive

administrative procedure for resolving health benefits claims. In addition to Plaintiff's

disputed health insurance claims, Plaintiff is also alleging a violation of his civil rights,

liberties, and protections that fall outside of the FEHBA. Plaintiff avers that FEHBA

preemption regulations do not apply here.

119.     Plaintiff's is bringing claims under the Federal Tort Claims Act alleging state law claims under the Tom Bane Civil Rights Act (California Civil Code § 52.1), the California Unruh Civil Rights Act, and for infliction of emotional distress under California common law. These California state laws impose tort liability upon private persons and business establishments for the wrongful conduct alleged in Plaintiff's complaint.

120.     The California Unruh Civil Rights Act prohibits discrimination in the full and equal accommodations, advantages, facilities, provokes or services in all business establishments. Defendants violated the Unruh Civil rights act when they unreasonably and intentionally denied Plaintiff access to his health insurance plan benefits based on his membership in a protected class. Specifically, Plaintiff's treating physicians have recommended specific treatments, therapies, and assistive devices to manage his condition and improve his prospects for recovery. However, Defendants have repeatedly denied authorization or coverage for these doctor-recommended treatments. In doing so, Defendants have failed to offer any medically appropriate alternatives. Instead of approving the prescribed rehabilitation or therapy—or providing an equivalent solution—Defendants simply issue blanket denials (or fail to respond at all), leaving Plaintiff without any viable treatment path that accommodates his medical condition and disability. This has stalled Plaintiff's rehabilitation and recovery, causing his condition to worsen due to lack of timely intervention.

121.     The Tom Bane Act safeguards individuals from any interference with their constitutional and statutory rights by threat, intimidation, or coercion. Defendants violated the Tom Bane Act when they administered health benefits claims, appeals, and reviews in a way to force or compel Plaintiff to forego treatments or to withdraw from his health plan. California courts recognize a suit against a private employer under this

statute. See, *Stamps v. Superior Court*, 136 Cal. App. 4th 1441 (2006). Specifically, Defendants have often ignored Plaintiff's claims, appeals, and inquiries regarding his healthcare coverage. In an effort to obtain treatment to manage his medical condition and disability, Plaintiff has submitted multiple grievances, appeals, and requests for reconsideration to contest the denials of coverage and to seek urgently needed care. Rather than providing Plaintiff with decisions that he could formally appeal or an explanation of his rights, Defendants frequently simply failed to respond or left claims in limbo for extended periods. Plaintiff avers that these failures in the administration of Plaintiff's health benefits is intended to coerce Plaintiff to forego treatments or to withdraw from his health plan as a way to cut costs and limit coverage for individuals with his medical condition.

122.    California law recognizes the impacts of emotional distress caused by others, and courts allow Plaintiffs to seek compensation for it.

123.    Plaintiff alleges that OPM is liable under a theory of negligent supervision for the negligent supervision of employees and contractors involved in the administration of FEHB health benefits. OPM owed Plaintiff a duty of care to take reasonable steps to manage Plaintiff's health benefits in a way that would not cause harm and would not deprive him of his civil rights and liberties. OPM failed its duty by allowing its employees and contractors to deny, delay and otherwise fail to provide him with medically necessary health benefits that accommodate his care needs, level of acuity and mobility, and by failing to ensure that its employees and contractors complied with federal discrimination laws. OPM also failed its duty by failing to protect Plaintiff from discrimination in the provision of his health benefits by failing to properly investigate and correct the discrimination when it became aware of Plaintiff's complaints on or about March 2023, and continuing. As a result of OPM's negligence,

Plaintiff was forced to go without medically necessary treatment and to endure mistreatment and discrimination, among other harms. Plaintiff asserts that these government employees were acting within the scope of their employment and under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred.

124.     Plaintiff further alleges OPM is liable in negligence based on the doctrine of "respondeat superior". Specifically, OPM's employees and contractors failed to act reasonably in the administration, provision, and oversight of Plaintiff's healthcare coverage under the FEHB Program, leading to harm to Plaintiff and deprivation of his civil rights and protections. Plaintiff alleges that since 2022 and continuing, OPM, along with its employees and contractors involved in administering the Federal Employees Health Benefits (FEHB) Program, were negligent in their handling of Plaintiff's health benefits and have failed to provide plaintiff with health benefits that meet his care needs, level of acuity, and mobility, and by failing to ensure that its employees and contractors complied with federal discrimination law.  OPM also failed to take reasonable steps to investigate, prevent or correct unlawful discrimination, harassment and retaliation in the administration of Plaintiff's health benefits once they became aware of the allegations.  Plaintiff asserts that these government employees were acting within the scope of their employment and under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred.

## COUNT TWELVE
**Violation of California Unruh Civil Rights Act (California Civ Code Section 51)**
**(As to Defendants BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center)**

125.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

126.     The Unruh Civil Rights Act also protects individuals from disability discrimination in public accommodations in California. Plaintiff, a member of a constitutionally protected class, was unable to access and participate in healthcare services equally and was subjected to discriminatory treatment by Defendant sin violation of the Unruh Act when Defendants: withheld clinically indicated rehabilitative treatment causing prolonged periods of bed confinement, refusing to submit claims to Plaintiff's secondary (Medicare) and tertiary (Medicaid) insurers after his primary insurance denied coverage, thus denying Plaintiff access to his healthcare benefits and services, refusing to assist with viable rehabilitation placement, creating discharge plans that fail to accommodate Plaintiff's needs, acuity and mobility, and providing incomplete and/or inaccurate hospitalization and hospital discharge information to his providers in an effort to sabotage his ability to obtain and maintain the health care necessary to manage his medical conditions and to maintain function.

**COUNT THIRTEEN**
**Violation of Tom Bane Civil Rights Act (California Civ Code Section 52.1)**
**(As to Defendants BCBSA, UCSFMC, Alameda County Health System, Sutter Eden**
**Medical Center, Dr. Youssef, Peraza, Ahn, Dull)**

127.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

128.     The Tom Bane Civil Rights Act safeguards individuals from any interference with their constitutional and statutory rights by threat, intimidation, or coercion.

129.     Plaintiff is a member of a constitutionally protected class and was subjected to interference by Defendants that violated the Bane Act by withholding medically necessary services and otherwise interfering in the provision of Plaintiff's health

services so as to force or compel Plaintiff to forgo further treatments and/or health benefits and/or health services.

## COUNT FOURTEEN
### Violation of 42 U.S.C 1985
**(As to Defendants BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center Dr. Youssef, Peraza, Ahn, Dull)**

130.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

131.     Section 1985 prohibits conspiracies or a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws.

132.     Defendants conspired to deprive Plaintiff of equal protections and privileges of the law and took overt acts in furtherance the depriving Plaintiff of constitutionally and statutorily protected rights and privileges. Specifically, Defendants conspired to deny, refuse or otherwise withhold medically necessary services, including clinically indicated rehabilitative treatments, and so as to force or compel Plaintiff to forgo further treatments and/or health benefits and/or health services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Doe respectfully requests that this Court enter judgment in his favor and against the Defendants, and grant the following relief:

## I. COMPENSATORY DAMAGES

**Against All Defendants (UCSF Medical Center, Alameda County Health Services, Eden Medical Center, Dr. Youssef, Peraza, Ahn, Dull, OPM and BCBSA):**

1.  Award Plaintiff compensatory damages in an amount to be proven at trial for physical pain, mental anguish, loss of dignity, medical expenses, loss of access to healthcare benefits, and all other actual damages caused by Defendants' misconduct, including improper discharge, denial of rehabilitation services, and discriminatory treatment.

## II. PUNITIVE DAMAGES

**Against Individual Defendants Dr. Youssef, Peraza, Ahn, and Dull:**

2.  Award punitive and exemplary damages to punish and deter Defendants for willful, malicious, and/or reckless disregard for Plaintiff's federally protected rights, including under the ADA, Rehabilitation Act, and Fourteenth Amendment.

## III. DECLARATORY RELIEF

**Against All Defendants:**

3.  Declare that:

    o   Defendants' actions violated the Rehabilitation Act, 29 U.S.C. § 794;

    o   Defendants' actions violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.;

    o   Defendants' actions violated the Affordable Care Act, 42 U.S.C. § 18116;

    o   Defendants' actions violated Title VI and Title VII of the Civil Rights Act of 1964;

    o   Defendants' actions violated Plaintiff's constitutional rights under the Fourteenth Amendment;

    o   Defendants' failure to properly coordinate benefits violated Medicare law and the Federal Employees Health Benefits Act (FEHBA);

- o   The appellate process administered by OPM and related entities under the FEHBA is outdated and structurally deficient, failing to provide prompt or fair review consistent with current healthcare law and due process standards;

- o   The existing administrative rules and claims review timelines are unreasonably burdensome and deny the insured meaningful relief.

4.  Declare that a shortened turnaround time for claim appeals and administrative review is necessary to ensure a fair outcome and protect Plaintiff's rights as an insured individual under FEHBA and related programs.

## IV. INJUNCTIVE RELIEF

**Against OPM, UCSF Medical Center, and Blue Shield of California through Case Manager Hyunji Ahn:**

5.  Issue a permanent injunction requiring Defendants to:

- o   Promptly and lawfully adjudicate Plaintiff's health benefit claims in compliance with FEHBA, Medicare and Medi-Cal;

- o   Provide or authorize all medically necessary treatments, therapies, rehabilitation services, and assistive devices recommended by licensed treating physicians;

- o   Submit claims to secondary and tertiary insurers (e.g., Medicare and Medi-Cal) and ensure timely coordination of benefits;

- o   Facilitate in-state care wherever feasible and avoid forced out-of-state treatment absent Plaintiff's informed consent;

- o   Refrain from improper or unsupported confinement and ensure provision of assistive devices and due process for medical necessity reviews;

- o Develop and implement policies that ensure nondiscriminatory healthcare access for individuals with disabilities and people of color;

- o Redesign the administrative appeal and review process under FEHBA and any related federal programs to ensure fair and prompt resolution of healthcare disputes, consistent with the Constitution, federal civil rights laws, and evolving medical care standards.

- o That an Order be issued requiring all Plaintiff's future discharge plans are prepared pursuant to the Medicare Act and reflect the Plaintiff's actual level of acuity, including the severity of illness, functional independence, sensory impairments, behavioral and social needs, and other clinical factors ensuring that discharge decisions are based on individualized medical necessity, not administrative convenience.

- o That an Order be issued requiring Defendants to cease and desist from including non-medical, speculative, or personal opinions in Plaintiff's medical records or discharge summaries.  Further, that Plaintiff shall be given the right to supplement his medical file with clarifying statements or documentation in response to any such remarks to ensure accuracy, integrity, and medical relevance of his patient records.

## V. DAMAGES FOR STATUTORY VIOLATIONS

**Under the Rehabilitation Act (Against OPM, BCBSA, UCSFMC, Alameda Health System, Eden Medical Center):**

1. Award compensatory damages for discriminatory denial of benefits and services.

2.  Award declaratory and injunctive relief ensuring equal access to healthcare under the FEHB Program.

3.  Award attorneys' fees pursuant to 29 U.S.C. § 794a.

**Under ACA 1557 (Against BCBSA, UCSFMC, Alameda Health System, Eden Medical Center**

4.  Award compensatory damages for discriminatory denial of benefits and services.

5.  Award declaratory and injunctive relief ensuring equal access to healthcare.

6.  Award attorneys' fees as authorized by law.

**Under ACA 2719 (Against BCBSA)**

7.  Award declaratory and injunctive relief ensuring compliance with ACA 2719

8.  Declare that a shortened turnaround time for claim appeals and administrative review is necessary to ensure a fair outcome and protect Plaintiff's rights as an insured individual under FEHBA and related programs.

9.  Award attorneys' fees as authorized by law.

**Under Title VI of the Civil Rights Act (Against All Defendants):**

10. Award damages and declaratory relief for race-based discrimination in healthcare delivery.

11. Issue an injunction mandating policy updates and staff training.

12. Award attorneys' fees under 42 U.S.C. § 2000d-7.

**Under the FEHBA (Against OPM and BCBSA/Ahn):**

13. Compel immediate compliance with FEHBA requirements.

14. Award damages for delay and denial of treatment.

15. Award declaratory relief for FEHBA violations.

16. Award fees as authorized by law.

**Under 42 U.S.C. § 1983 Against (BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center, Dr. Youssef, Peraza, Ahn, Dull):**

17. Award compensatory damages for violations of due process and equal protection.

18. Grant injunctive relief against further unconstitutional practices.

19. Award attorneys' fees under 42 U.S.C. § 1988.

**Under Medicare Law (Against OPM, BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center):**

20. Declare Defendants' actions violated Medicare provisions.

21. Compel proper Medicare billing and benefit coordination.

22. Award compensatory damages for denied or delayed services.

**Under the ADA (Against OPM, BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center, Dr. Youssef, Peraza, Ahn, Dull):**

23. Issue injunction requiring compliance with the ADA and reasonable accommodations.

24. Award damages for discriminatory conduct.

25. Declare ADA violations occurred.

26. Award attorneys' fees under 42 U.S.C. § 12205.

**Under the Federal Tort Claims Act (Against OPM):**

27. Award damages for administrative negligence, mismanagement, and infliction of emotional distress.

28. Declare violations of common law and statutory duties under the FTCA.

29. Grant injunctive relief to reform claims processing and benefits access.

**Under Unruh Civil Rights Act (BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center, Dr. Youssef, Peraza, Ahn, Dull):**

30. Award damages for discriminatory conduct.

31. Declare Unruh Act violations occurred.

32. Award attorneys' fees as authorized by law.

**Under Tom Bane Civil Rights Act (BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center, Dr. Youssef, Peraza, Ahn, Dull):**

33. Award damages for civil rights violations

34. Declare Tom Bane Civil Rights Act violations occurred.

35. Award attorneys' fees as authorized by law.

**Under 42 U.S.C. 1985 (BCBSA, UCSFMC, Alameda County Health System, Eden Medical Center, Dr. Youssef, Peraza, Ahn, Dull):**

36. Award damages for conspiracy

37. Declare Section 1985 violations occurred.

38. Award attorneys' fees as authorized by law.

**VI. ATTORNEYS' FEES AND COSTS**

**Against All Defendants as Appropriate:**

39. Award reasonable attorneys' fees and litigation costs pursuant to:

- 29 U.S.C. § 794a(b).

- 42 U.S.C. §§ 1988 and 12205.

- California Civil Code §§ 52 and 54.3.

- And any other applicable statutory provisions.

## VII. FURTHER RELIEF

40. Award prejudgment and post-judgment interest.

41. Impose any additional equitable relief necessary to ensure full compliance with Court orders.

42. Appoint an independent monitor or special master, if necessary, to ensure institutional compliance and oversight.


Dated: March 30, 2025                  /s/ *Rhonda Lunsford*
                                       Rhonda Lunsford, Esq.
                                       Attorney for Plaintiff